IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-187

 No. COA20-304

 Filed 4 May 2021

 Wake County, No. 15-CVS-5836

 TOWN OF APEX, Plaintiff,

 v.

 BEVERLY L. RUBIN, Defendant.

 Appeal by Defendant from orders entered 21 January 2020 by Judge G. Bryan

 Collins in Wake County Superior Court. Heard in the Court of Appeals 24 February

 2021.

 Nexsen Pruet, PLLC, by David P. Ferrell and Norman W. Shearin, for Plaintiff-
 Appellee.

 Fox Rothschild LLP, by Matthew Nis Leerberg and Troy D. Shelton, and
 Howard, Stallings, From, Atkins, Angell & Davis, P.A., by Kenneth C. Haywood
 and B. Joan Davis, for Defendant-Appellant.

 Johnston, Allison & Hord, P.A., by Susanne Todd and Maisha M. Blakeney,
 and Sever Storey, LLP, by Shiloh Daum, for amicus curiae North Carolina
 Advocates for Justice.

 John Locke Foundation, by Jonathan D. Guze, amicus curiae.

 INMAN, Judge.

¶1 Our Federal and State Constitutions protect us, our homes, and our lands from

 unrestrained government intrusion. Police cannot roam about our private property
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 unfettered. U.S. Const. amend. IV; N.C. Const. art. I § 20. The military cannot

 forcibly occupy our homes during peacetime. U.S. Const. amend. III; N.C. Const. art.

 I § 31. And, most pertinent to this appeal, the State cannot take our property without

 both a public purpose and payment of just compensation. U.S. Const. amend. V; N.C.

 Const. art. I § 19.

¶2 Plaintiff-Appellee Town of Apex (“the Town”) asks this Court to uphold the

 Town’s continuing intrusion onto the land of a private citizen through a circuitous

 and strained application of North Carolina law on eminent domain and inverse

 condemnations. The Town’s position, in essence and when taken to its logical

 conclusion, is as follows: (1) if a municipality occupies and takes a person’s private

 property for no public purpose whatsoever, that private landowner can do nothing to

 physically recover her land or oust the municipality; (2) if the encroachment

 decreases the property’s value, then the landowner’s sole remedy is compensation by

 inverse condemnation; and (3) in all other instances, a landowner is powerless to

 recover or otherwise vindicate her constitutional rights. This is not the law, nor can

 it be consistent with our Federal and State Constitutions.

¶3 Defendant-Appellant Beverly L. Rubin (“Ms. Rubin”) appeals from orders

 denying her motion to enforce a judgment in her favor in a direct condemnation action

 and granting the Town’s motion to be relieved from that judgment. She asserts that,

 having successfully recovered title to her land after the Town’s unlawful taking, she
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 is entitled to repossess her property free of a sewer pipe installed by the Town. We

 agree with Ms. Rubin that mandatory injunctive relief may be available to her, but

 hold that it is not available in the direct condemnation action that was taken to final

 judgment without a request for or adjudication concerning the availability of

 injunctive relief. Instead, she may pursue mandatory injunctive relief against the

 Town to remedy its continuing encroachment through a claim for trespass.

 I. FACTUAL AND PROCEDURAL HISTORY

¶4 Many of the facts underlying this appeal were summarized in our prior

 decision, Town of Apex v. Rubin, 262 N.C. App. 148, 821 S.E.2d 613 (2018). However,

 because we now address post-judgment motions that were entered after that decision,

 a brief recitation of the factual and procedural history is warranted.

 1. The Direct Condemnation Action and Installation of the Sewer Pipe

¶5 Ms. Rubin owns a tract of land in rural Wake County. In 2012 and 2013, a

 local real estate developer, Brad Zadell (“Mr. Zadell”), purchased several parcels to

 the east and west of Ms. Rubin’s land with the intention of improving and selling

 them for residential development. Rubin, 262 N.C. App. at 149, 821 S.E.2d at 614.

 The western tract, known as Arcadia West, received sewer service from the Town,

 while the eastern tract, Riley’s Pond, had no such access. Id. Mr. Zadell asked Ms.

 Rubin if she would grant him an easement to connect Riley’s Pond to the Town’s sewer

 service. Id. Ms. Rubin declined. Id.
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

¶6 Undeterred, Mr. Zadell turned to the Town’s utilities director, asking for the

 Town to take the sewer easement by eminent domain.1 Id. In 2015, The Town and

 Mr. Zadell agreed that: (1) the Town would pursue a direct condemnation action to

 seize a sewer easement across Ms. Rubin’s property; and (2) Mr. Zadell would cover

 any and all costs incurred by the Town in the exercise of its eminent domain powers.

 Id. at 150, 821 S.E.2d at 615. A few weeks after entering into the agreement, Mr.

 Zadell contracted to sell Riley’s Pond at a $2.5 million profit. Id.

¶7 In March 2015, the Town council voted to pursue a direct condemnation action

 for a sewer line easement across Mr. Rubin’s land. Id. It filed the direct

 condemnation action the following month and used its statutory “quick-take” powers2

 to obtain immediate title to a 40’ easement running across Ms. Rubin’s property for

 the installation and maintenance of sewer lines “above, in, on, over, above, [sic] under,

 through, and across” the easement area. Ms. Rubin timely filed an answer contesting

 the taking as illegal and unconstitutional, but she did not pursue any injunctive relief

 to restrain the Town from constructing the sewer line.

 1 The Town is authorized by its charter to exercise the same eminent domain powers

 granted to the North Carolina Department of Transportation found in N.C. Gen. Stat. §§ 136-
 103, et seq. (2019).
 2 Quick-take powers grant a condemnor “right to immediate possession” of the

 condemned property “[u]pon the filing of the complaint and the declaration of taking and
 deposit in court[.]” N.C. Gen. Stat. § 136-104.
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

¶8 After Ms. Rubin filed her answer, and while her challenge to the condemnation

 action was pending, the Town installed a sewer line within the 40’ easement. The

 trial court later resolved Ms. Rubin’s challenge to the condemnation and entered a

 judgment (the “Judgment”) concluding the taking was not for a public purpose, even

 though the sewer line would serve the Riley’s Pond subdivision. The Judgment

 declared the Town’s “claim to [Ms. Rubin’s] property by Eminent Domain . . . null and

 void" and dismissed the direct condemnation action. The Judgment was left

 undisturbed following a lengthy series of post-judgment motions and appeals. See id.

 at 153, 821 S.E.2d at 616-17 (2018), temp. stay dissolved, disc. rev. denied, 372 N.C.

 107, 825 S.E.2d 253 (2019).

 2. Litigation Following the First Appeal

¶9 After this Court’s decision in the prior appeal, Ms. Rubin filed a combined

 motion and petition for writ of mandamus asking the trial court to compel the Town

 to remove the sewer line. Ms. Rubin sought this relief under several theories,

 including: (1) N.C. Gen. Stat. § 136-114 (2019), which gives trial courts in direct

 condemnation actions “the power to make all the necessary orders and rules of

 procedure necessary to carry into effect the object and intent of this Chapter[;]” (2)

 N.C. Gen. Stat. § 1-302 (2019) and Rule 70 of the North Carolina Rules of Civil

 Procedure, which collectively authorize trial courts to compel a party to comply with

 a judgment directing the conveyance of land; (3) by writ of mandamus to compel the
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 Town to perform the act of removing the pipes; and (4) through the trial court’s

 inherent powers to enforce its own orders.3

¶ 10 The Town responded to Ms. Rubin’s motion in two ways. First, it filed a motion

 for relief in the direct condemnation action on the basis that the Judgment voided the

 action ab initio, extinguished the trial court’s jurisdiction, and rendered the

 installation of the sewer line a separate inverse condemnation. Second, the Town

 filed a new declaratory judgment lawsuit seeking to declare the sewer pipe

 installation an easement by inverse condemnation, limit Ms. Rubin’s relief to that

 singular remedy, and enjoin her from removing the sewer line.

¶ 11 The trial court heard motions in the two actions jointly and ruled for the Town

 in each. In the direct condemnation action, the trial court denied Ms. Rubin’s motion

 to enforce the Judgment, denied Ms. Rubin’s petition for writ of mandamus, and

 granted the Town’s motion for relief from the Judgment. In the declaratory judgment

 action, the trial court denied a motion to dismiss filed by Ms. Rubin and entered a

 3 Ms. Rubin’s motion asserted additional bases for injunctive relief. We do not address
 those additional bases because Ms. Rubin has not argued them in her briefs on appeal. See
 N.C. R. App. P. 28(a) (2021) (“Issues not presented and discussed in a party’s brief are deemed
 abandoned.”).
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 preliminary injunction prohibiting Ms. Rubin from disturbing the sewer line. This

 decision addresses only the direct condemnation action.4

 3. The Order Denying Ms. Rubin Injunctive Relief

¶ 12 In the first of two orders in the direct condemnation action, the trial court

 denied Ms. Rubin’s motion for injunctive relief, based in part on the following facts:

 4. [Ms. Rubin] did not plead any claim for relief entitling
 her to the relief requested in the Motion. [Ms. Rubin] could
 have requested the Court grant her injunctive relief before
 the sewer pipe was installed under her property, but she
 did not do so. [Ms. Rubin] did not request injunctive relief
 from the Court prior to the installation of the sewer line to
 prevent construction . . . and did not request injunctive
 relief to close or remove the sewer pipe at the all other
 issues hearing before the Court.

 5. Although the sewer pipe had been installed for
 approximately one year prior to the all issues hearing . . .
 the Judgment does not address the actual installation,
 maintenance and use of the sewer pipe under [Ms. Rubin]’s
 property and does not require removal
 ....

 11. On or about 27 July 2015 the Town constructed an
 underground sewer line 18 feet under the entire width of a
 narrow portion of Rubin’s property.

 ....

 14. The sewer line was installed prior to the entry of the

 4 The declaratory judgment action is discussed in greater detail in Town of Apex v.

 Rubin, No. COA20-305, ___ N.C. App. ___, 2021-NCCOA-___ (filed 4 May 2021), filed
 contemporaneously with this opinion.
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 Judgment, remains in place and in use, and serves
 approximately fifty (50) residential homes and/or lots in
 the Riley’s Pond Subdivision . . . .

¶ 13 The trial court also made several findings and conclusions of law5 interpreting

 the effect of the Judgment:

 2. The Judgment does not order the town to do any of the
 acts specified in Rule 70 of the Rules of Civil Procedure.

 3. The Judgment does not require the return or delivery of
 real property as per N.C. Gen. Stat. § 1-302.

 The trial court also entered conclusions of law rejecting Ms. Rubin’s arguments for

 injunctive relief and concluding that the Town had taken an easement by inverse

 condemnation:

 1. The Judgment does not afford to [Ms. Rubin] any of the
 relief which she seeks in the Motion. State Highway
 Commission v. Thornton, 271 N.C. 227, 156 S.E.2d 248
 (1967).

 5 The parties dispute whether the trial court’s interpretation of the Judgment is a

 question of law or fact. Determinations as to the “legal effect of [an] order” are conclusions
 of law, which we review de novo. Delozier v. Bird, 125 N.C. 493, 34 S.E.2d 643, 643 (1899);
 see also N.C. Farm Bureau Mut. Ins. Co. v. Cully’s Motorcross Park, Inc., 366 N.C. 505, 512,
 742 S.E.2d 781, 786 (2013) (“[C]onclusions of law are reviewed de novo.” (citation omitted)).
 To the extent the trial court’s particular interpretations require application of legal principles
 to the facts, they are mixed questions of law and fact. See, e.g., Brown v. Charlotte-
 Mecklenburg Bd. of Ed., 269 N.C. 667, 670, 153 S.E.2d 335, 338 (1967) (holding mixed
 questions of law and fact arise when “[t]he determination . . . requires an application of
 principles of law to the determination of facts”). We are not bound by the labels given these
 determinations by the trial court in conducting our analysis. In re David A. Simpson, P.C.,
 211 N.C. App. 483, 487-88, 711 S.E.2d 165, 169 (2011). The standards of review we apply to
 specific aspects of the trial court’s orders are discussed below in the Analysis Section of this
 opinion.
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

....

7. A writ of mandamus is inappropriate because [Ms.
Rubin] has failed to show that she has a clear legal right to
demand removal of the sewer line and that the Town is
under a plainly defined, positive legal duty to remove it.
Mandamus is appropriate to compel the performance of a
ministerial act but not to establish a legal right. Meares v.
Town of Beaufort, 193 N.C. App. 49, 667 S.E.2d 224 (2008);
Mears v. Board of Education, 214 N.C. 89, 91, 197 S.E.2d
752, 753 (1938).

8. The Court has the inherent authority to enforce its own
orders. However, the Court is not authorized and refuses
to expand this Judgment beyond its terms, read in
additional terms, and/or order mandatory injunctive relief
that [Ms. Rubin] did not request or plead. State Highway
Commission v. Thornton, 271 N.C. 227, 156 S.E.2d 248
(1967).

9. Regardless of the Court’s authority, the Court does not
read the Judgment the way [Ms. Rubin] suggests and the
Court does not agree the Judgment expressly or implicitly
requires removal of the sewer line. [Ms. Rubin] could have
requested the Court grant her injunctive relief before the
sewer pipe was installed under her property but she did not
do so. The Court will not now require the Town to remove
the sewer line.

....

11. Given the Court’s dismissal of the condemnation
complaint as null and void, the installation of the
underground sewer line by the Town on 27 July 2015 was
a taking of [Ms. Rubin]’s property by the Town that was
not subject to a condemnation complaint, and thus was an
inverse condemnation of an underground sewer
easement. . . .
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 13. [Ms. Rubin]’s allegations that the condemnation
 complaint resulted in a constitutional violation and [Ms.
 Rubin]’s comments about fairness do not support or provide
 a basis for the granting of the Motion. Further, the
 Supreme Court in [Wilkie v. City of Boiling Springs, 370
 N.C. 540, 809 S.E.2d 853 (2018)], in spite of addressing
 constitutional issues with condemnations, held that a
 landowner has a claim for just compensation regardless of
 whether a taking is for a public or private purpose. The
 Supreme Court did not state that the landowner had a
 claim for permanent injunctive relief. Where there is an
 adequate remedy at law, injunctive relief, which is what
 [Ms. Rubin] seeks, will not be granted.

 14. [Ms. Rubin] has an adequate remedy at law—i.e.
 compensation for inverse condemnation. . . . The Town’s
 pending declaratory judgment action . . . provides [Ms.
 Rubin] an avenue to pursue her remedy at law for the
 inverse condemnation of the sewer easement—
 compensation.

 15. As such, the Court declines to enforce the Judgment as
 [Ms. Rubin] requests and declines to issue a writ of
 mandamus.

 4. The Order Granting Relief from Judgment

¶ 14 The trial court’s second order in the direct condemnation action granted the

 Town’s motion for relief from the Judgment. In that order, the trial court made

 findings of fact and conclusions of law consistent with several of those made in the

 order denying Ms. Rubin’s motion to enforce the Judgment, including conclusions

 that an inverse condemnation had occurred and Ms. Rubin’s only avenue for relief

 was an inverse condemnation claim for money damages. The second order added
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

several conclusions of law explaining why the Town was entitled to relief from the

Judgment:

 3. It is just and equitable to allow the Town relief from the
 prospective application of the Judgment as it relates to the
 underground sewer pipe and corresponding easement.

 4. [Ms. Rubin’s] failure to seek and obtain injunctive relief
 prior to the construction of the sewer pipe and the Town’s
 acquisition of the sewer easement by inverse condemnation
 renders the Judgment moot as to the installation of the
 sewer pipe and corresponding easement. . . .

 5. The Judgment’s dismissal of the condemnation
 proceeding had no effect on the rights inversely taken. . . .

 6. At the time of entry of the Judgment, the question of
 whether the Town had the authority to condemn the sewer
 easement described in the original condemnation action
 was moot—specifically as to the installation of the sewer
 pipe and inversely condemned easement.

 7. Since the Judgment against the Town is moot, the Court
 grants the Town relief from the prospective application of
 the Judgment as it relates to the existence of the
 underground sewer pipe and corresponding easement on
 [Ms. Rubin’s] property.

 8. The Judgment is void as it relates to the installed sewer
 pipe and corresponding easement because the trial court
 did not have jurisdiction over [these] issues at the time of
 the entry of the Judgment. The issue of whether the Town
 could maintain a sewer line across [Ms. Rubin’s] property
 no longer existed at the time that Judgment was entered.
 [Ms. Rubin] did not seek an injunction prior to construction
 and the Town had already constructed the sewer
 easement. . . .
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

9. Further the Judgment found the original condemnation
complaint null and void and dismissed it; it is as if it was
never filed. Therefore, the Town physically invaded [Ms.
Rubin’s] property to construct a public sewer line on 27
July 2015 without a condemnation action—which under
North Carolina law is an inverse taking.

10. Prior to the entry of the Judgment on 18 October 2016,
the Town had already inversely taken and owned the sewer
easement across [Ms. Rubin’s] property on 27 July 2015.
Since the sewer easement had been inversely taken prior
to the entry of the Judgment, the court lacked subject
matter jurisdiction to enter the Judgment to the extent the
Judgment is interpreted to negatively affect the installed
sewer pipe and corresponding easement.

11. The absence of jurisdiction means the Judgment is
void. A void judgment is a legal nullity. . . .

12. Since the Judgment against the Town is void as to [Ms.
Rubin’s] challenge to the installed sewer pine and
corresponding easement, the Town should be granted the
prospective relief from the Judgment pursuant to Rule
60(b)(4).

13. In addition, the Town is given prospective relief from
the judgment pursuant to Rule 60(b)(6), as Rule 60(b)(6)
may be properly employed to grant relief from a judgment
affected by a subsequent change in the law. . . .

14. In the Judgment, the Court stated that the paramount
reason for the taking of the sewer easement described in
the complaint was for a private purpose and the public’s
interest was merely incidental. However, prior to entry of
judgment, the Town had already constructed the sewer
pipe and acquired the sewer easement by inverse
condemnation.

15. In 2018, the North Carolina Supreme Court reversed
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 the Court of Appeals and ruled that public use or purpose
 is not an element of an inverse condemnation claim. . . .
 Rule 60(b)(6) may be properly employed to grant relief from
 a judgment affected by a subsequent change in the law. . . .

 16. As a result of the Wilkie decision from the Supreme
 Court, the legal basis for the Judgment no longer exists to
 the extent the Judgment is interpreted to negatively affect
 the installed sewer pipe and corresponding easement. [Ms.
 Rubin] alleges that the Town took the sewer easement on
 her property for a private purpose and thus lacked
 authority to take her property. However, public purpose is
 not an element of inverse condemnation. Moreover, [the]
 Town acquired ownership of the sewer easement on 27 July
 2015 prior to entry of the Judgment. All easement rights
 in the property transferred to the Town and were owned by
 it prior to entry of Judgment. Consequently, [the] Town
 should be granted relief from Judgment.

 Ms. Rubin timely noticed an appeal from both orders. Following oral argument, both

 parties filed supplemental briefs with this Court.6

 II. ANALYSIS

¶ 15 Ms. Rubin argues the trial court erred in concluding: (1) the installation of the

 pipe resulted in an inverse condemnation; (2) the inverse condemnation rendered the

 Judgment moot and void; (3) injunctive relief, either in the form of a writ of

 mandamus or otherwise, was unavailable to enforce the Judgment; and (4) inverse

 6 Ms. Rubin submitted her supplemental arguments through a motion for leave to

 submit a supplemental response, and the Town provided its additional briefing in its
 response to Ms. Rubin’s motion. We allow Ms. Rubin’s motion and consider these
 supplemental materials submitted by the parties.
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 condemnation is the only available remedy for the Town’s constitutional violation.

 We address the applicable standard of review before addressing each argument in

 turn.

 1. Standard of Review

¶ 16 Findings of fact, when left unchallenged on appeal or supported by competent

 record evidence, are binding on this Court. Bell v. Mozley, 216 N.C. App. 540, 543,

 716 S.E.2d 868, 871 (2011). Conclusions of law are generally reviewable de novo,

 Sisk v. Transylvania Cmty. Hosp., Inc., 364 N.C. 172, 180, 695 S.E.2d 429, 435 (2010),

 and mixed questions of law and fact are fully reviewable on appeal, Hinton v. Hinton,

 250 N.C. App. 340, 347, 792 S.E.2d 202, 206 (2016). However, when the trial court

 reaches a legal conclusion on whether to exercise its discretionary inherent authority,

 “we need determine only whether they are the result of a reasoned decision.” Sisk,

 364 N.C. at 435, 695 S.E.2d at 180 (citations omitted); see also In re Cranor, 247 N.C.

 App. 565, 573, 786 S.E.2d 379, 385 (2016) (“The proper standard of review for acts by

 the trial court in the exercise of its inherent authority is abuse of discretion.” (citation

 omitted)). “When discretionary rulings are made under a misapprehension of the

 law, this may constitute an abuse of discretion,” Gailey v. Triangle Billiards & Blues

 Club, Inc., 179 N.C. App. 848, 851, 635 S.E.2d 482, 484 (2006) (citations omitted), and

 “the orders or rulings of the trial judge may be vacated and the case remanded for

 further proceedings, modified or reversed, as the rights of the parties and the
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 applicable law may require,” State v. Cornell, 281 N.C. 20, 30, 187 S.E.2d 768, 774

 (1972) (citations omitted).

 2. Installation of the Pipe Did Not Vest the Town with Title as a Matter of Law

¶ 17 In both orders, the trial court concluded that the installation of the pipe

 resulted in an inverse condemnation of a sewer easement on Ms. Rubin’s property

 independent of the direct condemnation action. We agree with Ms. Rubin that the

 trial court erred in this respect.

¶ 18 Our Supreme Court has recently described inverse condemnations as follows:

 “Inverse condemnation” is a term often used to designate a
 cause of action against a governmental defendant to recover
 the value of property which has been taken in fact by the
 governmental defendant, even though no formal exercise of
 the power of eminent domain has been attempted by the
 taking agency.

 Wilkie v. City of Boiling Spring Lakes, 370 N.C. 540, 552, 809 S.E.2d 853, 861 (2018)

 (cleaned up) (emphasis added).7 This general description accords with the right of

 action afforded to landowners by statute. N.C. Gen. Stat. § 136-111 authorizes

 inverse condemnation suits by landowners against the Department of Transportation

 when “land or a compensable interest therein has been taken by . . . the Department

 7 Consistent with our Supreme Court’s current practice, see, e.g., In re G.G.M., ___

 N.C. ___, ___, 2021-NCSC-25, ¶ 22 (2021), we use the parenthetical “(cleaned up)” to denote
 removal of extraneous punctuation and citations without alteration of the quoted passage’s
 meaning. See generally Jack Metzler, Cleaning Up Quotations, 18 J. Appellate Prac. &
 Process 143 (2017) (discussing the use and purposes of the “cleaned up” parenthetical).
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 of Transportation and no complaint and declaration of taking has been filed.” So

 inverse condemnation is a claim assertable by landowners against a government

 entity “which forces a governmental body to exercise its power of condemnation, even

 though it may have no desire to do so.” Hoyle v. City of Charlotte, 276 N.C. 292, 302,

 172 S.E.2d 1, 8 (1970) (quotation marks and citation omitted).

¶ 19 Although caselaw uniformly establishes that inverse condemnation claims

 inure in favor of landowners against government entities that have declined to pursue

 direct condemnation, the Town maintains that its installation of the sewer pipe—and

 subsequent defeat in the direct condemnation action—mean that the Town can

 compel a determination—against Ms. Rubin’s express interest—that it took title to a

 sewer easement by inverse condemnation. The Town specifically asserts that: (1) the

 Judgment dismissing the condemnation action voided the condemnation ab initio;

 and (2) the installation of the sewer pipe therefore amounted to a separate intrusion

 vesting title in the Town through inverse condemnation. The Town’s argument is not

 supported by the facts or the law.

¶ 20 Upon filing its direct condemnation action, the Town took legal title to a 40’-

 wide sewer easement across Ms. Rubin’s property through a statutory “quick take”

 provision. N.C. Gen. Stat. § 136-104 provides that title to property, “together with

 the right to immediate possession” of the land, vests in the condemnor upon the filing

 of its complaint, the declaration of taking, and deposit of a bond with the trial court.
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 Title to the easement at issue in this case included the right “to construct . . . a system

 of . . . pipes . . . under, through, and across” the easement area.

¶ 21 The Town entered onto Ms. Rubin’s property and installed a sewer line within

 the 40’ strip under the rights granted to it by the easement obtained at the outset of

 the direct condemnation action.8 That the Judgment would later decree the Town’s

 “claim to [Ms. Rubin]’s property by Eminent Domain . . . null and void” does not

 obviate, as a factual matter, that the Town installed the pipe under the “quick take”

 title granted to the Town in the direct condemnation action.

¶ 22 As for whether the installation of the sewer pipe and the Judgment’s decree

 vested the Town with title by inverse condemnation as a matter of law, two pertinent

 cases, State Highway Comm’n v. Thornton, 271 N.C. 227, 156 S.E.2d 248 (1967), and

 Town of Midland v. Morris, 209 N.C. App. 208, 704 S.E.2d 329 (2011), preclude a

 holding in favor of the Town on this issue.

¶ 23 In Thornton, the North Carolina State Highway Commission (the

 “Commission”) filed a direct condemnation action to construct a roadway across land

 belonging to the Thorntons. 271 N.C. at 229, 156 S.E.2d at 250. The Commission

 began construction five days after filing its action and, by the time the Thorntons

 8Indeed, the record includes an affidavit from the Town’s assistant manager and
 former utilities director stating that the direct condemnation action conveyed title to the 40’
 easement for completion of a “Gravity Sewer Project” and that the Gravity Sewer Project was
 completed through installation of the sewer pipe at issue here.
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

filed their answer challenging the taking as for a non-public purpose, construction

was 96 percent complete. Id. at 230, 156 S.E.2d at 251. The matter proceeded to trial

after the road was entirely finished, and the trial court entered a judgment in favor

of the Thorntons declaring the taking as not for a public purpose. Id. at 231-32, 156

S.E.2d at 251-52. On appeal to the Supreme Court, the Commission contended that

the construction of the road precluded the Thorntons from protesting the taking. Id.

at 237, 156 S.E.2d at 256. Though the Supreme Court ultimately reversed the trial

court and upheld the taking as for a public purpose, it did so only after rejecting this

argument by the Commission:

 Even if the Commission now finds itself embarrassed by its
 having constructed the road prematurely, upon its own
 assumption that the defendants would not assert a defense
 which the [direct condemnation] statute authorizes (i.e.,
 the Commission’s lack of power to condemn the land), the
 Commission may not assert such embarrassment as a bar
 to this right of the defendants. The Commission may not,
 by precipitate entry and construction, enlarge its own
 powers of condemnation . . . .

Id. (emphasis added). The Supreme Court also plainly held that the Thorntons were

“not estopped to assert that the land in question still belongs to them, free of any right

of way across it[,]” id. at 238, 136 S.E.2d at 257 (emphasis added), and, in the event

they prevailed, could assert “whatever rights they may have against those who have

trespassed upon their land and propose to continue to do so.” Id. at 240, 156 S.E.2d

at 258. Thornton establishes that completion of a project subject to a direct
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 condemnation action does not preclude a return of title—free and clear of any interest

 held by the State—to the prevailing landowner.

¶ 24 This Court reached a similar result in Midland, when the Town of Midland

 filed a direct condemnation action to construct a natural gas pipeline across private

 property. Midland, 209 N.C. App. at 211-13, 704 S.E.2d at 333-34. The private

 landowners argued the pipeline was not for a public purpose and moved for a

 preliminary injunction. Id. at 213, 704 S.E.2d at 334. The trial court denied the

 motion for a preliminary injunction and granted summary judgment for Midland. Id.

 Pending the property owners’ appeal to this Court, Midland completed the pipeline

 and argued that the appeal was moot because construction was complete. Id. We

 disagreed, holding that “if this Court finds in their favor, [the] [p]roperty [o]wners

 will be entitled to relief . . . in the form of return of title to the land.” Id. at 213-14,

 704 S.E.2d at 334 (citing Thornton, 271 N.C. at 241, 156 S.E.2d at 259) (additional

 citations omitted). We further explained:

 We are wholly unpersuaded by Midland’s argument that,
 even where a city flagrantly violates the statutes governing
 eminent domain, that city can obtain permanent title to the
 land by fulfilling the purpose of a condemnation before
 final judgment on the validity of condemnation is rendered.

 Id. at 214, 704 S.E.2d at 335.

¶ 25 Both Thornton and Midland establish that a government body cannot take title

 to private property for a non-public purpose simply by filing a direct condemnation
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 action and completing the construction project. In this case, the Town’s position that

 it took title to a sewer easement by inverse condemnation through construction of the

 sewer pipe during the pendency of the direct condemnation action is irreconcilable

 with Thornton’s prohibition against the enlargement of the government’s

 condemnation powers “by precipitate entry and construction.” 271 N.C. at 237, 156

 S.E.2d at 256. It also conflicts with this Court’s holding in Midland that title reverts

 to the landowner after a successful challenge to a condemnation action irrespective

 of whether the project was completed, as a “city [cannot] obtain permanent title to

 the land by fulfilling the purpose of a condemnation before final judgment . . . .” 209

 N.C. App. at 214, 704 S.E.2d at 335. We therefore hold the trial court erred in its

 conclusions of law, found throughout both orders, establishing that the Town took an

 easement by inverse condemnation when it completed the installation of the sewer

 pipe across Ms. Rubin’s property.

¶ 26 We are also unpersuaded by the Town’s argument that Wilkie supports the

 trial court’s conclusions to the contrary. That decision is distinguishable for at least

 three reasons. First, Wilkie involved an inverse condemnation claim brought by the

 landowners, i.e., the parties with the right to bring an inverse condemnation claim

 against the government. 370 N.C. at 552, 809 S.E.2d at 861-62; see also N.C. Gen.

 Stat. § 136-111 (2019) (authorizing a party “whose land . . . has been taken” to file a

 statutory inverse condemnation claim); Ferrell v. Dep’t of Transp., 104 N.C. App. 42,
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 46, 407 S.E.2d 601, 604 (1991) (observing that “property owners have a constitutional

 right to just compensation for takings” (citation omitted) (emphasis added)). Second,

 Wilkie did not involve the completion of a project subject to a disputed direct

 condemnation, as occurred in both Thornton and Midland. Lastly, though Wilkie

 held that landowners do not need to show that the taking was for a public purpose to

 prevail on an inverse condemnation claim, it did so in part because the public purpose

 requirement serves as a shield to protect the landowner from government intrusion

 rather than as a sword to cut away private property rights. 370 N.C. at 552-53, 809

 S.E.2d at 862. To adopt the Town’s interpretation of Wilkie would weaponize that

 decision and deprive private property owners of the public purpose protection. This

 we will not do.

¶ 27 The Town’s theory of the law would also open the door to numerous

 constitutional harms. For example, under the Town’s theory, a municipality could

 pursue a direct condemnation action to pave a landowner’s gravel driveway for no

 public purpose whatsoever, even if the landowner, in the exercise of his private

 property rights and out of a personal preference for gravel, had never sought to

 increase the value of his lot by paving the driveway. Then suppose, akin to Thornton,

 the municipality paved the landowner’s driveway before the landowner filed an

 answer. If the municipality voluntarily dismissed its condemnation action or lost on

 the merits at trial, the theory that inverse condemnation damages were the property
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 owner’s sole remedy would preclude relief for the municipality’s flagrant violation of

 the landowner’s constitutional rights, as an inverse condemnation action must show

 both an intrusion and “that the interference caused a decrease in the fair market

 value of [the property owner’s] land as a whole.” Kirby v. N.C. Dep’t of Transp., 368

 N.C. 847, 856, 786 S.E.2d 919, 926 (2016). We do not believe the law of inverse

 condemnation can be used to facilitate such an abuse of the government’s eminent

 domain power.

 3. The Judgment Is Not Moot

¶ 28 We further hold that the trial court erred in concluding the Judgment is moot.

 The trial court reached this conclusion in part on the basis that the Town took title

 to the easement by inverse condemnation. As explained supra, we hold that no such

 permanent vesting of title in the Town has occurred. If the completion of the pipeline

 in Midland did not preclude a return of title upon a final determination that the direct

 condemnation was not pursued for a public purpose, 209 N.C. App. at 213-14, 704

 S.E.2d at 334, the Town’s completion of the sewer line cannot moot Ms. Rubin’s

 judgment to that effect.

 4. The Judgment is Not Void

¶ 29 The trial court also erred in concluding that the Judgment was void “as it

 relates to the installed sewer pipe and corresponding easement because the trial court

 did not have jurisdiction over these[] issues at the time of the entry of the Judgment.”
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 The trial court premised this legal conclusion on its erroneous conclusion that an

 inverse condemnation had already occurred. As we have explained, the Town’s direct

 condemnation action and installation of the sewer pipe did not automatically vest it

 with title to an easement by inverse condemnation after the trial court determined

 that the taking was not for a public purpose, and Ms. Rubin is entitled to pursue relief

 despite completion of the project. See Thornton, 271 N.C. at 238, 156 S.E.2d at 257;

 Midland, 209 N.C. App. at 213-14, 704 S.E.2d at 334.

¶ 30 During the direct condemnation action, The Town maintained that it had

 installed the pipe pursuant to the easement obtained through its “quick take” powers.

 The trial court, in resolving the dispute raised by the direct condemnation complaint

 and Ms. Rubin’s answer contesting it, therefore had jurisdiction to determine whether

 the easement taken by the Town constituted a lawful taking for a public purpose

 irrespective of the installation of the sewer pipe. The Judgment’s resolution of that

 issue in favor of Ms. Rubin and against the Town did not divest the trial court of

 jurisdiction to enforce the judgment. See, e.g., Wildcatt v. Smith, 69 N.C. App. 1, 11,

 316 S.E.2d 870, 877 (1984) (“It is . . . true that while a court loses jurisdiction over a

 cause after it renders a final decree, it retains jurisdiction to correct or enforce its

 judgment.” (citations omitted)). We hold that the Judgment, contrary to the Town’s

 claim that it “is void as to Rubin’s ability to contest the installed sewer line and

 corresponding easement,” was not rendered void in any respect by the installation of
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 the sewer line. As our Supreme Court held in Thornton, Ms. Rubin is “not estopped

 to assert that the land in question still belongs to [her], free of any right of way across

 it,” 271 N.C. at 238, 156 S.E.2d at 257, and she may seek to vindicate “whatever rights

 [she] may have against those who have trespassed upon [her] land and propose to

 continue to do so,” id. at 240, 156 S.E.2d at 258, despite the sewer pipe’s construction.

¶ 31 Because the Judgment was neither moot nor void and the Town has not taken

 title by inverse condemnation, we reverse the trial court’s order granting the Town

 relief from the Judgment.

 5. The Effect of the Judgment

¶ 32 We next address what effect the Judgment has and whether it affords Ms.

 Rubin a right to obtain previously unpled mandatory injunctive relief as a matter of

 law. We hold, following Thornton and Midtown, that the Judgment reverted title to

 Ms. Rubin in fee, restoring to her exclusive rights in the tract and divesting the Town

 of any legal title or lawful claim to encroach on it. See Thornton, 271 N.C. at 238, 156

 S.E.2d at 257 (“The [Thorntons] are not estopped to assert that the land in question

 still belongs to them, free of any right of way across it.”); Midland, 209 N.C. App. at

 213-14, 704 S.E.2d at 334 (“[I]f this Court finds in their favor, [the] [p]roperty

 [o]wners will be entitled to relief . . . in the form of return of title to the land.”).

¶ 33 But because Ms. Rubin did not seek mandatory injunctive relief in the direct

 condemnation action, she is not entitled to that remedy by the plain language of the
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 Judgment. See Wildcatt, 69 N.C. App. at 11, 316 S.E.2d at 877 (holding that a trial

 court’s jurisdiction after final judgment is generally limited to enforcing the

 judgment). Ms. Rubin’s answer and defense in the direct condemnation action

 asserted that the Town’s taking of a 40’ easement to construct a sewer line was

 beyond the constitutional exercise of the Town’s eminent domain powers. The trial

 court agreed, concluded that the taking was unconstitutional, and rendered its

 Judgment declaring null and void both the direct condemnation action and the Town’s

 “quick take” title to the easement. The Judgment, given the issues raised before the

 trial court, did nothing more than that.

¶ 34 We acknowledge that mandatory injunctive relief is available as an ancillary

 remedy to an action resolving title to land. See English v. Holden Beach Realty Corp.,

 41 N.C. App. 1, 13, 254 S.E.2d 223, 234 (1979). But a mandatory injunction is

 available as ancillary relief only if it has been requested while the principal action is

 pending. See Jackson v. Jernigan, 216 N.C. 401, 403-04, 5 S.E.2d 143, 145 (1939)

 (noting mandatory injunctive relief is available as an ancillary remedy to a continuing

 trespass in an action resolving title “to protect the subject of the action against

 destruction or wrongful injury until the legal controversy has been settled” but it is

 unavailable “when it is not in protection of some right being litigated” (emphasis

 added)). Ms. Rubin failed to seek a mandatory injunction while the direct

 condemnation action was pending. Mandatory injunctive relief falls outside the scope
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 of the Judgment. For this reason, the trial court did not abuse its discretion in

 declining to exercise its inherent authority to enforce the Judgment in the manner

 Ms. Rubin requested.

¶ 35 Ms. Rubin asserts Thornton held that dismissal of a direct condemnation

 action is equivalent to a mandatory injunction requiring restoration of the property

 to its former condition. She misreads Thornton. There, as previously discussed, the

 Commission condemned the Thorntons’ land; though they protested the action by

 asserting it was not for a public purpose, they did not seek to enjoin construction. 271

 N.C. at 229-31, 156 S.E.2d at 250-52. After the road was complete, the trial court

 ruled that the condemnation was not for a public purpose and entered a judgment

 “permanently restraining [the Commission] (and enjoin[ing] [it]) from proceeding

 with the condemnation and appropriation of [the Thorntons’] lands.” Id. at 235, 156

 S.E.2d at 255 (quotation marks omitted). Our Supreme Court struck down the trial

 court’s judgment. Id. at 236, 156 S.E.2d at 255. The Court drew a line between

 injunctive relief to halt construction and injunctive relief to halt a condemnation

 proceeding:

 An injunction against the institution or maintenance of
 condemnation proceedings, as distinguished from an
 injunction to restrain construction, is not proper[l]y issued,
 however, where the ground asserted therefor is one which
 the landowner may assert as a defense in the
 condemnation proceeding itself, for, in that event, the
 landowner has an adequate remedy at law.
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 Id. (citation omitted). The Supreme Court held that because the Thorntons’ defense

 would mandate dismissal of the direct condemnation proceeding, an injunction

 prohibiting the proceeding from continuing would be redundant. Id. Thornton

 establishes that it is unnecessary to enjoin a proceeding that has been extinguished

 by dismissal; Thornton does not hold that dismissal of a condemnation action is

 equivalent to a mandatory injunction to undo the construction and restore the land.

¶ 36 Ms. Rubin further cites prior decisions from this Court, as well as from other

 jurisdictions, to support her assertion that the Judgment directly affords mandatory

 injunctive relief requiring the Town to remove the sewer pipe irrespective of her

 failure to raise the issue in the direct condemnation action. None of the cases she

 cites—with one exception—addresses whether construction completed by the

 condemnor during the pendency of the direct condemnation action must be removed

 if the contesting landowner prevails. See, e.g., Midland, 209 N.C. App. at 213-14, 704

 S.E.2d at 334 (holding a prevailing landowner in a direct condemnation action is

 “entitled to relief . . . in the form of return of title to the land” (emphasis added)); In

 re Rapp, 621 N.W.2d 781, 784 (Minn. 2001) (holding that a prevailing landowner is

 entitled to “relief in the form of the return of his property” notwithstanding the

 government’s completion of construction).

¶ 37 In the one North Carolina decision Ms. Rubin cites in which the trial court
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 issued a mandatory injunction in a direct condemnation action, the landowners

 requested that remedy by counterclaim during the pendency of the action and the

 injunction was not challenged on appeal. City of Statesville v. Roth, 77 N.C. App. 803,

 805-06, 336 S.E.2d 142, 143 (1985). As explained below, our Supreme Court has more

 recently held that such injunctive relief is generally not available against the State.

 See Clark v. Asheville Contracting Co., Inc., 316 N.C. 475, 485-86, 342 S.E.2d 832,

 838 (1986) (holding injunctive relief was unavailable against the Department of

 Transportation for an occupation of private property that was not for a public

 purpose).

¶ 38 We also are unpersuaded by Ms. Rubin’s reliance on N.C. Gen. Stat. §§ 40A-

 12, 1-302, and Rule 70 of the North Carolina Rules of Civil Procedure. N.C. Gen.

 Stat. § 40A-12 provides that “[w]here the procedure for conducting an action under

 this Chapter is not expressly provided for in this Chapter or by the statutes governing

 civil procedure . . . , the judge before whom such proceeding may be pending shall

 have the power to make all the necessary orders and rules of procedure necessary to

 carry into effect the object and intent of this Chapter.” Here, Ms. Rubin seeks more

 than just a procedural ruling; she seeks the additional substantive right to compel

 removal of the Town’s sewer pipe by order of the trial court. As we have explained,

 mandatory injunctive relief is ancillary to—and thus exceeds—the ordinary relief

 afforded by a judgment resolving a dispute as to title. See English, 41 N.C. App. at
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 13, 254 S.E.2d at 234 (noting mandatory injunctive relief is ancillary to an action

 seeking to resolve disputes of title and possession of land).

¶ 39 N.C. Gen. Stat. § 1-302 allows enforcement of “a judgment [that]

 requires . . . the delivery of real . . . property” and Rule 70 allows a trial court to

 order the conveyance of title “[i]f a judgment directs a party to execute a conveyance

 of land[.]” The Judgment in this case does neither. It simply restores title to Ms.

 Rubin. With title in hand, she is left to pursue the “rights [she] may have against

 those who have trespassed upon [her] land and propose to continue to do so.”

 Thornton, 271 N.C. at 240, 156 S.E.2d at 258.

¶ 40 Ms. Rubin further proposes, relying on Thornton, that the Judgment as a

 matter of law established her right to eject the Town by writ of mandamus. While

 mandatory injunctive relief may be available to her through a trespass claim for the

 Town’s continuing encroachment, the Judgment does not provide that relief. A

 mandatory injunction is available only after “consider[ation] [of] the relative

 convenience-inconvenience and the comparative injuries to the parties.” Clark, 316

 N.C. at 488, 342 S.E.2d at 839 (citation omitted).9 This Court has described that

 balancing test as follows:

 9 This is in contrast to encroachment actions between private landowners; because

 neither party possesses the right to private eminent domain, the trespasser cannot be
 compelled to buy the land she has unlawfully built upon and the injured landowner cannot
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 Factors to be considered are whether the [trespassing]
 owner acted in good faith or intentionally built on the
 [injured party’s] land and whether the hardship incurred
 in removing the structure is disproportionate to the harm
 caused by the encroachment. Mere inconvenience and
 expense are not sufficient to withhold injunctive relief. The
 relative hardship must be disproportionate.

 Williams, 82 N.C. App. at 384, 346 S.E.2d at 669 (citing Dobbs, Remedies, § 5.6

 (1973)). If Ms. Rubin establishes the Town’s trespass and its liability therefor, the

 trial court may grant mandatory injunctive relief only after weighing the equities as

 set forth above. See Clark, 316 N.C. at 488, 342 S.E.2d at 839.

¶ 41 Because a writ of mandamus is available only to enforce an established right,

 and the Judgment in this case did not establish the right Ms. Rubin seeks to enforce,

 she is not entitled to a writ of mandamus. See Ponder v. Joslin, 262 N.C. 496, 504,

 138 S.E.2d 143, 149 (1964) (“The function of the writ is . . . not to establish a legal

 right . . . .”).

 6. Mandatory Injunctive Relief is Available by Separate Trespass Claim

¶ 42 The Judgment does not provide the Town an easement by inverse

 condemnation as a matter of law. Ms. Rubin cannot be compelled to surrender title

 to the Town. The Judgment also does not afford Ms. Rubin the mandatory injunctive

 be compelled to sell the property encumbered by the encroachment. In such a circumstance,
 mandatory injunctive relief to destroy the encroachment is the only relief available and will
 be awarded as a matter of law. Williams v. South & South Rentals, Inc., 82 N.C. App. 378,
 384, 346 S.E.2d 665, 669 (1986).
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 relief she seeks. The question remains whether the trial court correctly concluded

 that the Judgment precluded mandatory injunctive relief. We hold that the trial

 court erred in this respect. While Ms. Rubin is not entitled to post-judgment

 mandatory injunctive relief in the direct condemnation action, she may bring a

 trespass claim against the Town in pursuit of the mandatory injunctive relief she

 seeks. We therefore vacate the trial court’s orders insofar as they preclude the

 availability of mandatory injunctive relief, but we ultimately affirm the trial court’s

 denial of Ms. Rubin’s motion to enforce the Judgment.

 a. Caselaw Regarding Remedies for Government Trespass

¶ 43 The proposition that a government body occupying private property outside its

 eminent domain powers is committing a trespass—and may be ejected for it—is not

 a new one. In McDowell v. City of Asheville, 112 N.C. 747, 17 S.E. 537 (1893), our

 Supreme Court held that a town committing such an act “may be treated as a

 trespasser and sued in ejectment.” 112 N.C. at 750, 17 S.E. at 538. The aggrieved

 landowner may also, however, “elect [not] to treat the [town] as a trespasser . . . [and]

 compel the [town] to assess the damages as provided by its charter,” id., effectively

 compelling a payment of just compensation by inverse condemnation. See, e.g., Hoyle,

 276 N.C. at 302, 172 S.E.2d at 8. This framing of the encroaching town as a

 trespassing tortfeasor and the ability of the landowner to elect damages or ejectment

 is generally consistent with Lloyd v. Venable, 168 N.C. 531, 84 S.E. 855 (1915), in
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 which a town that lacked any eminent domain powers built a street over private land.

 168 N.C. at 534, 84 S.E. at 857. In holding the landowner’s claim for damages could

 proceed, our Supreme Court held that the town’s “entry . . . was . . . unlawful . . . [but]

 the plaintiff can waive the tortious entry and the want of power to condemn, and

 recover a just and reasonable compensation for the property taken.” Id.

¶ 44 In the century since McDowell and Lloyd, our Supreme Court has limited

 monetary and injunctive relief available to private landowners following wrongful

 intrusion by the government.

¶ 45 In State Highway Comm’n v. Batts, 265 N.C. 346, 144 S.E.2d 126 (1965), the

 Commission, on behalf of the State, filed a condemnation action to pursue

 construction of a road across privately owned land and, in preparation for

 construction, cut down several trees on the property. 265 N.C. at 348, 144 S.E.2d at

 127. The private landowners challenged whether the condemnation was for a public

 purpose and counterclaimed for damages to recover the value of the trees cut down

 by the Commission’s employees. Id., 144 S.E.2d at 128. The trial court initially

 entered a preliminary injunction barring construction but ultimately concluded the

 condemnation was for a public purpose. Id. at 349-50, 144 S.E.2d at 129. On appeal,

 the Supreme Court held that the condemnation was not for a public purpose and

 reversed the trial court’s judgment. Id. at 360-61, 144 S.E.2d at 137. It also held,

 however, that the Commission could not be held liable for having cut down the trees:
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 [The private landowners] alleged that the construction of
 [the] highway is beyond the scope of the [eminent domain]
 authority vested in the Commission and inferentially that
 acts done in furtherance thereof are also unauthorized. We
 have agreed. Therefore, the cutting of the trees was not a
 taking of private property for public use. It was merely an
 unauthorized trespass by employees of the Commission, for
 which no cause of action exists against the Commission in
 favor of [the private landowners]. . . . An agency of the
 State is powerless to exceed the authority conferred upon
 it, and therefore cannot commit an actionable wrong.

 Id. at 361, 144 S.E.2d at 137-38 (citations omitted) (emphasis added). Batts did not

 address the availability of injunctive relief to bar government intrusion onto private

 property for a non-public purpose.

¶ 46 In Clark v. Asheville Contracting Co., 316 N.C. 475, 342 S.E.2d 832 (1986), our

 Supreme Court held that mandatory injunctive relief cannot be obtained against the

 State following its trespass on private land. 316 N.C. at 485, 342 S.E.2d at 838.

 There, a contractor building a highway near Asheville for the Department of

 Transportation (“DOT”) dumped rock waste in a residential subdivision. 316 N.C. at

 478-79, 342 S.E.2d at 834. The landowners sued DOT, the contractor, and the

 corporate president of the contractor, seeking damages in tort, a mandatory

 injunction ordering the removal of the rock waste and, failing that, just compensation

 for the taking by DOT. Id. All defendants cross-claimed each other and filed motions

 to dismiss and for summary judgment; at the hearing on those motions, the

 landowners elected to forego their claims for monetary damages in favor of an “order
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 that the [DOT] and the contractor remove the waste previously deposited on the

 property in question.” Id. at 482, 342 S.E.2d at 836. The landowners moved for

 summary judgment, and DOT sought to dismiss all claims against it on the grounds

 that it was immune from suit. Id. at 482-83, 342 S.E.2d at 836. The trial court denied

 DOT’s motions and, after hearing evidence, concluded that the dumping of waste was

 a taking for a non-public purpose. Id. It then ordered that the defendants, including

 DOT, “cease and desist, and eliminate the nonconforming use . . . and . . . remove all

 waste rock material placed on the property.” Id. at 483, 342 S.E.2d at 836. DOT

 appealed.

¶ 47 The Supreme Court held that the trial court erred in denying summary

 judgment for DOT. Id. at 484, 342 S.E.2d at 837. No party challenged the trial court’s

 determination that the waste disposal was not for a public purpose, so the Supreme

 Court took that conclusion as true. Id. It then held, citing both Thornton and Batts,

 that the landowners could not pursue their remedy against DOT for the unauthorized

 taking:

 As the acts the plaintiffs complain of were not for a public
 purpose, they were beyond the authority of DOT to take
 property for public use in the exercise of its statutory power
 of eminent domain. Since DOT as a matter of law is
 incapable of exceeding its authority, the acts complained of
 could not be a condemnation and taking of property by DOT
 or an actionable tort by DOT. At most, the acts complained
 of could have been unauthorized trespasses by agents of
 DOT, for which no actionable claim exists against DOT.
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

Id. at 485, 342 S.E.2d at 838 (citing Thornton, 271 N.C at 236, 156 S.E.2d at 255;

Batts, 265 N.C. at 361, 144 S.E.2d at 137) (additional citations omitted). The

Supreme Court held that DOT was immune to claims for both damages and

injunctive relief: “ [‘]The owner of property cannot maintain an action against the

State or any agency of the State in tort for damages to property (except as provided

by statute . . . ). It follows that he cannot maintain an action against it to restrain the

commission of a tort.[’] ” Id. at 486, 342 S.E.2d at 838 (quoting Shingleton v. State,

260 N.C. 451, 458, 133 S.E.2d 183, 188 (1963) (emphasis added)). Consistent with

Thornton and Batts, the Supreme Court held that the aggrieved landowners had a

valid cause of action against the individual public employees and officials responsible

for the unauthorized taking:

 [T]he landowner is not without a remedy. When public
 officers whose duty it is to supervise and direct a State
 agency attempt or threaten to invade the property rights of
 a citizen in disregard of law, they are not relieved of
 responsibility by the immunity of the State from suit, even
 though they act or assume to act under the authority and
 pursuant to the directions of the State.

Id. (quoting Shingleton, 260 N.C. at 458, 133 S.E.2d at 188). The Supreme Court

explained that “the acts of the defendants forming the basis of the claims by the

plaintiffs . . . against DOT must be viewed as not having been a taking for a public

use. Therefore, neither the plaintiffs nor the other defendants could maintain an
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 action against DOT arising from those acts.” Id.10

¶ 48 In sum, Clark holds that private landowners cannot seek mandatory injunctive

 relief against a State agency to restore property following an unauthorized

 encroachment for a non-public purpose. In such instances, it is the individual public

 officials and agents of the State who are personally liable for the illegal acts

 “invad[ing] the property rights of a citizen in disregard of law . . . even though they

 act or assume to act under the authority and pursuant to the directions of the State.”

 Id. (quoting Shingleton, 260 N.C. at 458, 133 S.E.2d at 188).

 b. Applying Precedent to This Case

¶ 49 Batts and Clark are distinguishable from this case because they concern the

 sovereign immunity of state agencies as opposed to municipalities.11 Unlike the

 10 Immunity from suit does not bar inverse condemnation claims filed by landowners

 pursuant to statutory provisions authorizing such actions. See Wilkie, 370 N.C. 540, 551 n.9,
 809 S.E.2d 853, 861 n.9 (holding Clark has no bearing on a statutory inverse condemnation
 claim brought under N.C. Gen. Stat. § 40A-51 because the Court’s decision in Clark did not
 discuss or reference the statute).
 11 Although Clark and Batts do not explicitly label the immunity discussed in those

 decisions as sovereign immunity, the case law cited and rationale provided in those decisions
 are grounded in sovereign immunity law. For example, both Clark and Batts cite Schloss v.
 State Highway & Public Works Comm’n, 230 N.C. 489, 53 S.E.2d 517 (1949) for their holdings
 on immunity, and Schloss begins with the maxim “[t]hat the sovereign may not be sued,
 either in its own courts or elsewhere, without its consent, is an established principle of
 jurisprudence in all civilized nations.” 230 N.C. at 491, 53 S.E.2d at 518 (citations omitted).
 Similarly, the legal fiction espoused in Batts and Clark that a State agency cannot commit a
 tortious act because it is unable to act outside its lawful authority is identical to the
 antiquated fiction that the “king can do no wrong” undergirding sovereign immunity. See
 Epps v. Duke Univ., 122 N.C. App. 198, 203, 468 S.E.2d 846, 850 (1996) (“Sovereign immunity
 extends from feudal England’s theory that the ‘king can do no wrong.’ ” (citation omitted)).
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 State, municipalities enjoy only limited governmental immunity that does not extend

 to propriety functions. Estate of Williams ex rel. Overton v. Pasquotank Cty. Parks &

 Recreation Dep’t, 366 N.C. 195, 199, 732 S.E.2d 137, 141 (2012).

¶ 50 A municipal sewer system that is supported by rates and fees is a propriety

 function not subject to governmental immunity. See, e.g., Harrison v. City of Sanford,

 177 N.C. App. 116, 121, 627 S.E.2d 672, 676 (2006) (“The law is clear in holding that

 the operation and maintenance of a sewer system is a proprietary function where the

 municipality sets rates and charges fees for maintenance of sewer lines.” (citations

 omitted)). The record in this case includes several sections from the Apex Town Code

 of Ordinances—submitted by the Town to the trial court—disclosing that the Town

 does charge rates and fees for its sewer service. On the record before us, we cannot

 conclude that the Town is immune to suit for trespassing.

¶ 51 We further distinguish Batts and Clark based on more recent precedents. Both

 of these decisions were decided years before our Supreme Court’s landmark decision

 in Corum v. Univ. of North Carolina, 330 N.C. 761, 413 S.E.2d 276 (1992), which

 carved out an express exception to sovereign immunity for constitutional injuries.

 Under Corum, “in the absence of an adequate state remedy, one whose state

 constitutional rights have been abridged has a direct claim against the State under

 our Constitution.” Id. at 782, 413 S.E.2d at 289. And, “when there is a clash between

 these constitutional rights and sovereign immunity, the constitutional rights must
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 prevail.” Id. at 786, 413 S.E.2d at 292. Our Supreme Court has since made clear that

 Corum preserves constitutional claims arising out of tortious acts by the State that

 are otherwise barred by sovereign immunity. See Craig ex rel. Craig v. New Hanover

 Cty Bd. of Educ., 363 N.C. 334, 339-40, 678 S.E.2d 351, 355 (2009) (“Plaintiff’s

 common law cause of action for negligence does not provide an adequate remedy at

 state law when governmental immunity stands as an absolute bar to such a claim.

 But as we held in Corum, plaintiff may move forward in the alternative, bringing his

 colorable claims directly under our State Constitution based on the same facts that

 formed the basis for his common law negligence claim.”).

¶ 52 The Town maintains on appeal, as it did before the trial court, that the only

 remedy available to Ms. Rubin is money damages for inverse condemnation. The

 Town relies on McAdoo v. City of Greensboro, 91 N.C. App. 570, 372 S.E.2d 742 (1988).

 In McAdoo, Greensboro widened a road onto private property, and the property

 owners sought damages for trespass and inverse condemnation. 91 N.C. App. at 570-

 71, 372 S.E.2d 742-43. We held that the landowners could not recover monetary

 damages for both trespass and inverse condemnation, as “[t]he exclusive remedy for

 failure to compensate for a ‘taking’ is inverse condemnation[,]” and the landowners

 therefore “ha[d] no common-law right to bring a trespass action against a city.” Id.

 at 573, 372 S.E.2d at 744 (citing Long v. City of Charlotte, 306 N.C. 187, 293 S.E.2d

 101 (1982)) (additional citation omitted) (emphasis added).
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

¶ 53 McAdoo is distinguishable for several reasons. Most obviously, that case did

 not involve a taking that was adjudicated to be unconstitutional and for a non-public

 purpose. And unlike the landowners in McAdoo, Ms. Rubin is not seeking to redress

 a “failure to compensate for a ‘taking[,]’ ” id., but has instead elected to pursue

 mandatory injunctive relief to remedy what was already determined to be an

 unconstitutional encroachment. Cf. Clark, 316 N.C. at 488, 342 S.E.2d at 839

 (holding that private landowners had valid claims only against DOT’s contractor

 where they had “elected to pursue only the remedy of injunctive relief” instead of

 claims for monetary damages, including inverse condemnation); Lloyd, 168 N.C. at

 531, 84 S.E. at 857 (providing a landowner injured by an intrusion onto private

 property not within the power of eminent domain “can waive the tortious entry and

 the want of power to condemn, and recover a just and reasonable compensation for

 the property taken”); McDowell, 112 N.C. at 747, 17 S.E. at 538 (“[I]t may be

 true . . . that the [City of Asheville] . . . may be treated as a trespasser, and sued in

 ejectment, but it is clear that such a remedy would not be appropriate to the peculiar

 circumstances of this case. [City of Asheville] is still occupying the land as a

 street . . . and the plaintiffs evidently prefer that the street should remain, and

 therefore do not elect to treat [the City] as a trespasser.” (citation omitted));

 Thornton, 271 N.C. at 241, 156 S.E.2d at 258 (describing Lloyd and McDowell as

 holding “where there is a taking not within the power of eminent domain the
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 landowner may elect to claim damages as if the taking had been lawful . . . .”).

¶ 54 McAdoo held that a claim for damages in trespass did not lie because the

 applicable inverse condemnation statute, N.C. Gen. Stat. § 40A-51, was the exclusive

 remedy. 91 N.C. App. at 573, 372 S.E.2d at 744. But a different statute applies here,

 and the Town’s actions compel a different result. N.C. Gen. Stat. § 136-111 authorizes

 an inverse condemnation claim against a condemnor only when “no complaint and

 declaration of taking has been filed.” Because the Town did file a complaint and

 declaration of taking to install the sewer pipe at issue, a statutory inverse

 condemnation claim was not available to Ms. Rubin.

¶ 55 We also disagree with the Town’s argument, presented in supplemental

 materials filed with this Court, that monetary compensation through an inverse

 condemnation action is a proper and “adequate state remedy” under Corum. As our

 Supreme Court unequivocally held in Thornton, payment for an occupation of private

 land by the State for a non-public purpose does not remedy the constitutional injury:

 It is not a sufficient answer that the landowner will be paid
 the full value of his land. It is his and he may not be
 compelled to accept its value in lieu of it unless it is taken
 from him for a public use. To take his property without his
 consent for a non-public use, even though he be paid its full
 value, is a violation of Article I, s 17, of the Constitution of
 this State and of the Due Process Clause of the Fourteenth
 Amendment to the Constitution of the United States.

 271 N.C. at 241, 156 S.E.2d at 259.
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

¶ 56 We note that mandatory injunctive relief is not guaranteed by a successful

 claim for trespass against the Town. In Clark, our Supreme Court remanded the

 matter back down to the trial court for further findings of fact that “consider[ed] the

 relative convenience-inconvenience and the comparative injuries to the parties.” 316

 N.C. at 488, 342 S.E.2d at 839. This Court has since enumerated the factors to be

 considered in that balancing test. Williams, 82 N.C. App. at 384, 346 S.E.2d at 669.

 The Town may also have other defenses precluding relief and it “is entitled to all

 defenses that may arise upon the facts and law of the case.” Corum, 330 N.C. at 786,

 413 S.E.2d at 292.

¶ 57 We also do not agree with the Town’s contention that Ms. Rubin’s failure to

 raise mandatory injunctive relief in the direct condemnation action precludes her

 from pursuing it after entry of the Judgment. The mandatory injunctive relief sought

 was not, at the time Ms. Rubin filed her answer, a compulsory counterclaim barred

 by res judicata. See, e.g., Murillo v. Daly, 169 N.C. App. 223, 227, 609 S.E.2d 478,

 481 (2005) (“As the [plaintiffs’] claims were not compulsory counterclaims in the

 previous action, they are not now barred by the doctrine of res judicata.”). Whether

 a counterclaim is mandatory under our Rules of Civil Procedure is determined based

 on its maturity at the time of pleading. See, e.g., Driggers v. Commercial Credit Corp.,

 31 N.C. App. 561, 564-65, 230 S.E.2d 201, 203 (1976) (“Where a cause of action,

 arising out of the transaction or occurrence that is the subject matter of the opposing
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 party’s claim, matures or is acquired by a pleader after he has served his pleading,

 the pleader is not required thereafter to supplement his pleading with a counterclaim.

 . . . [S]uch supplemental pleading is not mandated and failure to do so will not bar

 the claim.” (citations omitted)).

¶ 58 Here, the Town was not a trespasser until: (1) it installed the sewer pipe after

 Ms. Rubin had filed her answer, and; (2) the Judgment extinguishing the Town’s

 right, title, and interest in Ms. Rubin’s land went into effect. 12 Furthermore, the

 sewer pipe represents a continuing trespass, “a peculiar animal in the law. . . . [E]ach

 day the trespass continues a new wrong is committed.” Bishop v. Reinhold, 66 N.C.

 App. 379, 382, 311 S.E.2d 298, 300 (1984); see also John L. Roper Lumber Co. v.

 Elizabeth City Lumber Co., 140 N.C. 437, 442, 53 S.E. 134, 136 (1906) (holding

 recovery for the continuing injury of a trespass action is not barred by res judicata

 unless the claimant failed to establish in the prior action “the unlawful entry, or to

 show his possession, either actual or constructive, of the land upon which he alleges

 the defendant trespassed”).

¶ 59 As for Ms. Rubin’s failure to raise mandatory injunctive relief in the “all other

 issues” hearing required by N.C. Gen. Stat. § 136-108, we note that our Supreme

 12 The Judgment was temporarily stayed by the Supreme Court in the course of the

 Town’s appeals, and the stay was eventually dissolved on 27 March 2019. Town of Apex v.
 Rubin, 372 N.C. 107, 825 S.E.2d 253 (2019).
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 Court in Thornton, which involved a roadway completed during a direct

 condemnation action subject to an “all other issues” hearing under the same statute,

 held that the Thorntons, who never sought to enjoin construction, could continue to

 claim ownership “free of any right of way” and pursue relief “against those who have

 trespassed upon their land and propose to continue to do so” if they prevailed. 271

 N.C. at 238, 240, 156 S.E.2d at 257, 258 (emphasis added).

¶ 60 Like the Thorntons—had they prevailed—Ms. Rubin is entitled to relief

 against the Town for its trespass following the trial court Judgment dismissing the

 condemnation action and the exhaustion of the Town’s appeal rights. Given the

 nature of a continuing trespass, and Thornton’s holding on the continued availability

 of trespass actions, Ms. Rubin may seek injunctive relief for the continuing trespass

 that the Town refuses to abate. Id. at 240, 156 S.E.2d at 258.

¶ 61 Finally, as noted by the parties at oral argument, this case presents a unique

 circumstance involving the continued use of a sewer line, installed pursuant to a

 direct condemnation action, that was determined to be for a non-public purpose and

 in violation of the landowner’s constitutional rights. This case therefore differs

 significantly from those addressed by the inverse condemnation statutes N.C. Gen.

 Stat. §§ 136-111 and 40A-51, both of which apply when no condemnation action was

 filed by the government. We limit our holding to cases in which a municipality filed

 a direct condemnation action, constructed an improvement on the protesting
 TOWN OF APEX V. RUBIN

 2021-NCCOA-187

 Opinion of the Court

 landowner’s property, and later lost the condemnation action on the ground that it

 was for a non-public purpose. We do not address instances in which a taking occurred

 without the filing of a direct condemnation action.

 III. CONCLUSION

¶ 62 For the foregoing reasons, we vacate the provisions of the trial court’s order

 denying Ms. Rubin’s motion to enforce the Judgment that declared: (1) the Town took

 title to an easement by inverse condemnation; (2) the Judgment was moot; and (3)

 the Judgment was void. However, because the Judgment itself does not establish a

 right to mandatory injunctive relief and is instead available only through a separate

 claim against the Town upon a balancing of the equities, we affirm the trial court’s

 denial of that relief. The trial court’s order granting the Town relief from the

 Judgment is reversed.

 VACATED IN PART; AFFIRMED IN PART; REVERSED IN PART.

 Judges DILLON and JACKSON concur.